Good morning, Your Honors. Mary Lehman for the Appellant's Mystery. Mrs. Turner, I'd like to reserve three minutes for rebuttal. May I do so? What happens here in this case, at least from a civil perspective, can be pretty fascinating and interesting and borders on complicated at times. But in reality, what we have is a simple application of a rule, the FTC Holder Rule, which happens to be in the party's contract. Under the FTC Holder Rule, this means that the financer or lender stands in the shoes of the seller. And any defense that the buyer, the consumer, has against the seller can be asserted against the lender. Now, that's the rule, but as I understand the SEC reg, it only applies to cases of $25,000 and below. The Holder Rule, as it is in the regulation and statute, was specifically in this contract. And case law, California case law, page 96 of the excerpts of record, the California case, the music acceptance case, specifically says that whether or not the FTC rule technically applies or needs to be required under the statute, if it's in the party's contract, that governs. But, counsel, the question is, if that, if it's incorporated, then why isn't the limitation incorporated as well? No, I agree. And that was one of the arguments that we made in our brief, the limitation being $25,000 or less. And if this contract was more than $25,000, then the FTC Holder Rule didn't apply. Do you understand the question that we're asking? Okay. Okay. Maybe it's, I think the FTC Holder Rule is, we're using, and we used in our brief, as a shorthand for this statement or contractual provision in this case. Right. But the text of the rule itself has a limitation in it. No. Yes. The rule, not the contract provision. Okay. Correct. The rule has a limitation that says it only applies if the transaction at issue is $25,000 or less. This transaction was not $25,000 or less. So why shouldn't that limitation that's included in the text of the provision not apply here? That's the question. The text of the rule says that provision is not required unless the consumer transaction is under $25,000. That's one of the conditions. Okay. Here we have a contract, and it was drafted by CIT, that specifically included that provision. Without the limitation. Without the argument. Exactly. Without the limitation. And there's the general case law that parties are bound by their contractual terms means that that provision applies in this case. Also, there's a specific. Whose contract is this, by the way? Who drew the contract? It was CIT's form contract. CIT's form contract. Correct. And there's a specific case in California Music Acceptance case that deals with this situation, that even if it wasn't technically required to be in the contract under the FTC Holder Rule, if it was included in that contract, it governs. The, you know, the effect of the FTC Holder Rule, and again, I'm using it as a shorthand term for that contractual provision, is essentially strict liability. When the seller screws up, the ---- Well, you're really not relying on the rule as such. You're relying on the expressed language of the contract. Okay. So let's focus on that. Okay. So the contractual provision. The contractual provision is essentially a strict liability provision, that if the seller makes a mistake or the seller, you know, is found fraudulent, breach of warranty, the lender, financer bears the cost. And ---- So your argument is that none of, excuse me, none of the defenses, ratification or any of the other defenses against the buyers would apply. They're all wiped out by this contractual provision. Is that your argument? They're not wiped out. You apply the provision, which means that the financer lender stands in the shoes of the seller. So to the extent the seller would have those defenses or any defenses, then the lender standing in the shoes of the seller would have those defenses. In this particular case, knowing the facts of this case, which defenses survive? Ratification does not. We say none of the defenses survive. That was my question. Okay. Ratification does not survive because it's undisputed that the attorneys immediately complained to the seller and tried to fix it to the seller. Estoppel doesn't apply for that same reason, and Estoppel doesn't also apply because it couldn't be invoked by the seller who was fraudulent. Let me ask you a conceptual question. It seems to me you have or could have two contracts. One, a contract between the buyer and the seller to sell the boat, and another contract between the buyer and the lending company to finance the boat. You have two separate, theoretically two separate contracts. And then you're saying that for the purposes of the rights under the financing contract, that the, I think you're saying that the buyer can use the defenses that it would use against the seller to avoid the obligations under the financing contract. Yes. So to avoid, I don't know if. Well, conceptually I'm trying to separate this. And we had originally would have two different contracts. And so, for instance, if Estoppel and Waiver, if all they do is create a contract that between the buyer and the lending institution. In other words, your client never signed the contract. So they would say there is no contract. And all Estoppel and Waiver do, ratification would be to create a contract. But even if it was a legitimate contract, you didn't have the defense of ratification or Estoppel, all it would mean is you now had a contract between the buyer and CIT. And once you have that, whether it's by ratification that it's created or by Estoppel or by actually signing the document, it then still is subject to the same defenses that would have existed with respect to the seller. I think I agree. So it's not like you're ratifying. By ratifying the contract, you just you would just be accepting the contract. Would you still have the same defense under the contract which would exist against the seller? I think I see what you're saying. Yes. And I agree with that. So you're saying that you're accepting the contract. And part of that contract is the recognition of your defenses. All ratification or Estoppel does is create a contract. And it doesn't do any more than that. So even if they had signed the contract, they'd still be subject to the same rights of under the holder rule. Exactly. Are you conceding then that the contract was ratified? No. I thought the question was, well, ratification is, you know, a legal conclusion. So my understanding was the question was even if it was ratified, that means, okay, it's a valid contract, so you get the benefits of the provision, the holder rule, and that allows you to assert your defenses against the seller. In other words, what you're saying effectively is that CIT stands in the shoes of the marine company, the boat seller, and whatever defenses your client has against the boat seller are valid against CIT. Absolutely. All right. And the contract provision that you're talking about, was that in the contract that was signed by the Turners? Yes. It was in the forged contract and in the contract that was signed in blank. Yes, but not given to CIT. Well, I think that lays out the considerations pretty clearly. Why don't we hear from the other side, and then you've got plenty of time to respond. Okay. Thank you. Counsel? Good morning, Your Honors. May it please the Court, I'm Kenneth McArthur on behalf of the Pelley CIT Group Sales Finance, Inc. With me this morning are my colleagues, Mr. Fucano and Mr. Farrelly. Our intention is to split our time such that I'll be speaking for the first 18 minutes of our 20 minutes and that Mr. Fucano and Mr. Farrelly may speak for the additional two minutes. Maybe you can help me with the concept I was just discussing. It seems to me that the most that ratification and estoppel do is to make a contract where one wasn't signed. So we could assume for the purposes of today's hearing that the Turners had signed that contract. So now there's a contract between Turners and CIT, and now the seller is supposed to deliver a boat, and they don't. And so then the Turners go to CIT and say, we're rescinding this contract. We don't owe any money. And where does waiver and estoppel get you beyond that? It seems to me that the Turners could have asserted an offense of failure of consideration a year after they bought the boat, and that still your company would be subject to the same defenses they would have against the seller, so that if the boat wasn't delivered or it was delivered and, lo and behold, it had some latent defect that caused it to be unseaworthy, that they, if it was a warranty or something, they could go back against your client and not pay them. So waiver and estoppel doesn't get me anywhere, if I'm right in that analysis. Let me address that, Your Honor. There's an interplay between the doctrines of ratification and estoppel. I think as a threshold matter, it's ratification that is putting this agreement, this contract, into place. And it's all the facts and circumstances that we've briefed and which are primarily from the Turners' own declarations about what they did when they learned that this contract, that CIT thought there was a contract. And after that, in response to that, they stayed silent and they wanted the proceeds from the contract and so on. And I'm happy to address those facts. But moving to the doctrines, the ratification, the acquiescence, the silence, the contact puts the contract into place. The equitable estoppel issue comes into place because the contract provision says that CIT is subject to the claims and defenses that the Turners could assert against Marine. That provision is in the contract. That's what it says. That provision doesn't say, however, that CIT has given up or doesn't have its rights under State law to defend against those claims. But don't you stand in the shoes, doesn't your client stand in the shoes of the seller, though? He can't assert claims and or defenses that are inconsistent with those that the seller could assert, could he? Yes. And let me explain three reasons why. One, the specific language of the provision that's in the agreement. It doesn't limit CIT's rights to assert equitable estoppel, lapses, statute of limitations defenses. It doesn't say CIT can't assert those rights. I think we're focused on the appellant's rights, not CIT's rights. But it's recognized in the FTC guidelines and the portions that we've quoted to the Court that the FTC itself says we're not creating new claims and rights. We're just saying that the buyer can assert them against the seller. And then it goes on to give an example of if State law doctrines of estoppel, which is what the district court applied here, latches, statute of limitations apply, then the buyer is still subject to asserting its rights and saying, hey, there's fraud here, there's seller fraud. I shouldn't have to pay because there's seller fraud. The doctrine of equitable estoppel can, as the district court found, take those once valid rights, the right to assert that, and say, no, you can't assert that because you delayed too long. You stayed silenced too long. You can't assert it against the CIT. Well, they're not alleging that you committed a fraud. They're alleging that the seller committed a fraud. But the provision. And you're subject to that defense. The provision permits them to permit, the provision permits the Turners at the outset of this transaction, when they got that welcome letter saying that there's a transaction and the Turners get it and they're shocked and surprised and they say to themselves, we didn't authorize this, that provision in the contract permits the Turners to say to CIT, you may not know anything about the problems here, but this, we have issues with the seller. The seller has committed fraud as to us. We don't have to pay you. It doesn't say that. The provision doesn't say that, that it's limited to informing CIT. It limits CIT's ability to assert defenses that the seller couldn't assert. What it expressly says is that the holder is subject to the claims and defenses that the Turners could assert. So the CIT, I'm sorry. Against the seller. I said that earlier.  Well, CIT as a holder is now subject to, and that's the language of the provision, subject to claims and defenses that the Turners could assert against Marine. Right. Yeah. It doesn't say that CIT can't invoke State law doctrines like Estoppel, like Latches, in defending against those claims, because the Turners, they have the right to assert them, and the. Could Marine have invoked those State law doctrines to which you refer? Whether Marine could have or not, this case is about whether CIT, whether they can be. Well, that's the problem. Conceptually, it's because you stand in the shoes of Marine. The language in the contract is not stand in the shoes. The language in the contract is subject to the claims and defenses. What about the interpretation of that language by the California court? The interpretation of the language by the California court, you mean the district court in this matter, Your Honor? No, the music acceptance. The music acceptance court says that if you put the provision in the contract, even if the contract is outside the $25,000 limit, the language is in the contract. This contract was not over $25,000. It says MAC stands in the shoes of Sherman Clay. So the you stand in the shoes of the seller. I mean, the language doesn't say that, but the interpretation of that provision says you stand in the shoes of the seller. And that's what the district court here recognized in saying that these claims were once valid. The Turners had these claims, but they didn't speak up and they didn't act on them. And so the doctrine of equity is still there. Was the district judge saying that they couldn't assert those against the seller? In other words, they accepted the fraud and they owed the seller everything? The district court is saying, looking at the totality of the facts here. I'm talking about the seller. The seller who didn't deliver him a boat and used a fraudulent document, that they had waived all those claims? The — I think the district court didn't address, because it wasn't necessary, whether those claims could be asserted or not as against Marine as the seller. The question was — It is highly wrong, because if they can, they can assert them against you. I mean, for you to win, it seems to me like if you stand in the shoes, that you're going — that the district court would have to conclude they had no claim against the seller by having gone along with them trying to get the thing refinanced and sold, that they waived any claim against them. Because if they didn't, they can assert it against you. Your Honor, the two — the two points I'd make in response to that are that the FCC guidelines recognize that there can be limits on these rights that the sellers — I'm sorry, these rights that the churners have to assert these claims. And the FCC guidelines specifically talk about equitable estoppel, the doctrine applied in this case. But the equitable estoppel from suing Marine, the seller. Whether they are or not isn't the issue in the question as framed in the FCC guidelines is, did you give notice to the defendant of these matters that are subject to the equitable estoppel? The defendant being Marine or the defendant being CIA? The defendant presumably being reading the FCC guidelines. Whoever you're suing, in the context of the FCC guidelines, you're suing the holder. Did you give notice to the defendant? The holder. But the contract provision didn't require notice. The contract provision doesn't bar the application of the State law doctrine of equitable estoppel to these claims. And this can be seen in the statute. Well, maybe. Are you conceding, then, we should send this back? Because obviously this is a question of fact. Oh, no, Your Honor. No, no. The ratification or estoppel. These matters, as we've briefed, are not a the question of fact is not one that goes to the jury that needs to be, that cannot be adjudicated on summary judgment. It can be adjudicated on summary judgment, as the district court did here, on the record of these facts over two years of conduct by the Churners where they didn't have the boat. They facilitated payments that were coming from Marine. They take those payments in and move them over to CIT. How can you adjudicate that on summary judgment if you take the facts in the light most favorable to the nonmoving party? Because the only conclusion that can be drawn from the facts that the Churners themselves present in their declarations is that they intended to affirm this contract, that they did, in fact, stay silent, that they didn't say we don't have a boat, this contract was unauthorized, we didn't pay $120,000 down payment. In fact, we got all of our money back. In fact, we're not ourselves making the payments. Assume they affirm the contract. Yes. Where are you? They still have a claim against Marine and you stand in Marine's shoes. So even if they affirm the contract, all it does is create a contract. It doesn't give you the right to say you owe us the money because you stand in the shoes of the person that didn't deliver the boat. So where we stand is then the doctrine of equitable estoppel that says that their delay and their silence and their making these payments kept CIT from knowing there's a problem here. And CIT therefore couldn't exercise its rights, the rights it would have had to act at that point had it known that the Churners hadn't authorized this transaction at all. Go ahead. Did CIT ever ask for a copy of the ship's documents to verify ownership and whether there had a lien on the ship or not? Your Honor, the... I found that very surprising. I know what your answer is going to be. I found that just astonishing that a company of your size would not even bother to find out whether or not there was real title here and whether their lien was recorded. One of the undisputed facts in this case is that the Coast Guard, that the customary practice in dealing with the Coast Guard for titling vessels can take up to a year before title gets changed from one owner to the next. So the, it's not the same as things that we all might be more familiar with in terms of the real estate world or the DMV world where things happen more quickly. So there's a year's period before the time you can go to the official keeper of the records, the official keeper of the titles and know what, how the titles have been changed. Well, then maybe in terms of your company's due diligence, somebody should at least have gone out to see the vessel and to verify that the documents were in order. Your Honor, this is where the district court, in looking at the evidence and the record that was before the court, said there's, everything here is ostensibly benign. There's nothing to draw an inference from of negligence. There's no case authority that supports the proposition that the company's obligated to do that. And so there's no basis there for not applying the doctrine of equitable estoppel of taking two incidents and saying, well, who's responsible for this? Who, even though they didn't commit the fraud, who should bear the loss here, which is the application of the doctrine of equitable estoppel. And I would want to bring one case that was cited by the Turners to the Court's attention. It's the Haffey case from Nevada in which the Court analyzed, in that case, the lower court had said that the purchaser had to pay and had applied an equitable estoppel. And the Supreme Court of Nevada said, no, that shouldn't happen here. And the Court looked at the FTC Holder Rule, and in making that decision, the Court didn't say, why, look, there's seller fraud, you, the holder, you lose. You can't apply the doctrine of equitable estoppel. We don't. We can just stop right there. We can say the seller committed fraud, no need to move on. Instead, the Court looked at the conduct of the finance company, of the holder, and said, look, look at what you've done. You knew the work wasn't finished when you bought the order, when you bought this The contractor was trustworthy. You assured them the work would be completed. And the Court then says, it's that conduct of the lender, of the holder, that makes it inappropriate to apply the doctrine of equitable estoppel, but to defeat the contract. I'm not saying not to defeat the contract, but to defeat the claim of seller fraud. So the analysis doesn't end at the point of saying, well, you stand in the shoes, both the FTC and that case recognize you can lose those rights, which is what the district court held here. And which is Let me ask you this question. The Turner said that Marine, the Marine dealers represented that he was acting on behalf of CIT and was authorized to do so. Now, if one credits that in the light most favorable to the Turners, how can equitable estoppel be rendered in the summary judgment context? The Turners claim that that's what they were told by Marine. And you have to, on the summary judgment in posture, you have to credit that. And where this — and their claims in that regard are, we did repudiate. We went to Marine. We said, we don't want this. And we told Marine we had a problem, and we did, in fact, meet our duty of inquiry about knowing these facts by going to Marine. And what the California Court's case of Royce says is you can't — when you have a circumstance where your agent and the district court held that Marine was the Turner's agent, based on the entrusting of money, entrusting of the blank contract, you can't — once you know your agent's done something that wasn't authorized, you can't just rely on that agent to tell you what happened. How would they know that it wasn't authorized if he represented that it was authorized and he was CIT's agent, had CIT's forms? Well, the two things I'd say there, Your Honor, is they know from the welcome letter, which says, here's what to do if this is not right. Contact this P.O. box. Call this phone number. Use this e-mail address. That those were the things that they were to do if there was an issue with the contractors it was presented to them. And secondly, what the case stands for as the proposition is, even if it's CIT's agent, if there's a dual agency, in other words, if Marine is both parties' agents, there's case authority, you can't trust the agent once you know they've done something wrong. Once you know they've acted outside the scope of what they were supposed to do, once you know, in your mind, I gave the man a blank contract and he filled it out and sent it to the — and now somebody says I owe them over the next 20 years a million dollars, you can't go to that person that did that and say, could you explain to me everything that's happened? That's what the Royce case stands for, because the party in the Royce case learned of a forgery, a forged endorsement on a check, and said, oh, that's okay. And they didn't — they accepted their agent's explanation of what it was about, and it wasn't about that. And there was a second forgery of a note that that party was held with ratified, and even though they didn't get the money, to be bound to that agreement because of estoppel and ratification. Counsel, you're down to three minutes left for your side. You can keep them or you can let one of your co-counsel speak. It's up to you. Rules of procedure, Your Honor. All right. Thank you. And this application of — lost my thought. Two other points to make with respect to the FCC holder rule. The arguments aren't properly before this Court. They weren't made in opposition to the original summary judgment motion. The district court specifically found that. That wasn't raised on — in the panelist's opening brief in this case. Now, which arguments were not raised from your point of view? Rules, arguments about the body of law about the FCC holder doctrine. You're relying on the body of law itself, are you not? We're saying that the result here is not inconsistent with that, that that doesn't change the result. And perhaps it's illuminating, but it's not — and illustrates what should happen here. But those arguments weren't raised before the court. But, Counsel, didn't the district court address those — address the issues? The district court went on to say, while they're not in a second ruling, the district court went on to say, even though they're not properly before the court, let's deal with them. As you lose, the rights you once had that were valid, they're now lost because of your delay, because of your acquiescence, because of the two years of your conduct. So we can look at that issue. If the court looked at the issue, we can look at the issue, certainly. Can we not? Well, the court denied it for those two reasons, that it wasn't properly before the court. And the court went on to say, even if it was properly before the court, you would lose. The court reached the issue is what I'm saying. The court did address and discuss the issue in that framework of it's not properly here, but even if it were, here's how the ruling would be. And also, just, you know, as a point of reference, the opposition to your first motion was responded to by reciting to that language that's in the contract, wasn't it? The contract language was at issue. The specific notice provision was there. The key here, and the other point with respect to the interplay here between Gestapo and the FTC Holder Rule is this. The issue, the approach for the review of this case, because it is an equitable doctrine that the court is addressing, is that the court is to look at the trial court's determination as to whether there's a tribal issue of material facts de novo, and to look at whether the equitable doctrine applies de novo. But once reaching the actual application of the equitable doctrine to the facts, the undisputed facts before the court, that review is abuse of discretion. And CIT submits that this Court should hold that the district court did not abuse its discretion once it applied the undisputed facts, properly invoked, I'm sorry, properly invoked the doctrine of equitable estoppel. And once it reached it, didn't abuse its discretion in applying it to the facts in the record, which are set forth in the Turner's own declarations. Roberts. All right. Thank you, counsel. Your time has expired. Thank you, Your Honor. Ms. Fleeman, you have some retained time. Just really briefly, I would say, as set forth in our brief, that the case loss supports the Turner's position in this case as far as standing in the shoes of the seller and no case support from any jurisdiction that we were able to find or that CIT was able to find supports CIT's position. And unless there are any further questions, we'll submit. No further questions. The case just argued will be submitted for decision, and the Court will adjourn. All rise. Hear ye, hear ye. All those having had business before this Honorable Court in the U.S. Court of Appeals for the Ninth Circuit shall now depart. This Court stands adjourned.
judges: O'scannlain, Rawlinson, Whaley